**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

SOMER LAGRONE                                                                                                    PLAINTIFF

v.                                               Case No. 5:08CV00187

JEFFERSON COUNTY; and THOMAS E. BROWN, in his
individual and official capacities as Juvenile Court Judge for
Jefferson County                                                                                              DEFENDANTS

**OPINION AND ORDER**

Somer LaGrone brings this action against Jefferson County and Thomas Brown, in his individual and official capacities as Juvenile Court Judge for Jefferson County,[1] alleging that the defendants retaliated against her in violation of 42 U.S.C. §§ 1981 and 1983. The defendants have filed separate motions for summary judgment, and LaGrone has responded. For the following reasons, summary judgment is denied.

**I.**

A court should enter summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law.

---

[1] Brown is the Division 6 Circuit Judge for the 11th Judicial Circuit (West), which consists of Jefferson and Lincoln Counties. Pursuant to Amendment 80 to the Arkansas Constitution, the Administrative Plan for the 11th Judicial Circuit (West) provides for Division 6 to be assigned all of the juvenile cases and no cases other than juvenile cases. *See* http://courts.state.ar.us/circuitcourt/2008AdminPlans/2008_11Circuit.pdf.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. If the moving party meets this burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting FED. R. CIV. P. 56(e)). A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all inferences in his favor, mindful that summary judgment seldom should be granted in discrimination cases where claims are often based on inferences. *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000) (collecting cases). *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

## II.

In October 2005, Judge Thomas Brown hired Somer LaGrone to work as a Truancy Officer at the Jack Jones Juvenile Center in Jefferson County. On August 18, 2006, LaGrone had a verbal altercation with Michael Hurst, the center's administrator and a chief deputy of the county sheriff's department, regarding where LaGrone had parked her vehicle. Hurst was upset that LaGrone was blocking the driveway for emergency vehicles and prison vans. LaGrone states that she had parked in the driveway temporarily in order to return county property to another employee. LaGrone also states that she parked her car near to the spot where Hurst usually parked, even though Hurst had no official parking space. LaGrone eventually moved her vehicle to the employee parking area.

LaGrone alleges that Hurst shouted profanities at her and berated her during the course of the verbal altercation. In addition to continual profanity, LaGrone asserts that Hurst threatened to give her a citation and have her fired and then entered the center with a ticket book in hand. LaGrone called the Pine Bluff police department that afternoon, and a police officer wrote an incident report.

On August 21, 2006, Brown met with LaGrone regarding her complaint against Hurst. Brown told LaGrone to submit her own narrative as well as statements from other employee witnesses. Brown says that LaGrone never mentioned in her reports or their meetings that the incident was racially motivated or that she was harassed because of her race, and Brown says that he was never made aware of Hurst's alleged discriminatory treatment of other employees. LaGrone says that in their August 21 meeting she informed Brown that Hurst had previously harassed Miller and Ahmed Pace, both of whom are African-American. LaGrone says that, although she did not directly state that Miller and Pace were African-American, Brown knew that Miller was African-American, and Brown stated that he knew the odds were extremely high that Pace was also African-American because he attended the University of Arkansas at Pine Bluff.

On August 22, 2006, Brown met with both LaGrone and Hurst. LaGrone says that also present in their meeting were Eric Miller, her immediate supervisor, and Brenda Cuba, an officer with FINS (Families in Need of Services). During that meeting, Hurst apologized to LaGrone, but LaGrone refused to accept his apology. LaGrone says that Brown tried to persuade her to accept the apology, stating that it would be the "Christian" or "godly" thing to do, and that Brown was disappointed with her for not accepting the apology. On August 25, 2006, LaGrone filed a formal complaint with the county judge against Hurst. Brown says that Hurst was suspended with pay at

3

the conclusion of the investigation, but LaGrone says that he was first suspended thirty days with pay before the investigation and was then given a "warning letter" after the investigation.

On May 21, 2007, LaGrone was involved in an incident with Christi Rucker, her case coordinator. Brown says that LaGrone followed Rucker to different areas of the office while yelling at her to stay in her place, and that Judge Mike Holcomb overheard the screaming and asked them to calm down. LaGrone says that Rucker accused her of lying about the instructions she had given to Rucker regarding cancellation notices. LaGrone says she then followed Rucker to her desk, and the two engaged in a heated conversation until Holcomb hinted that they should keep their voices down. Neither LaGrone nor Rucker received any immediate discipline for this incident, but both of them submitted narratives of their version of events, and LaGrone asked employee witnesses to write statements as well.

On June 6, 2007, LaGrone was terminated. Her termination came approximately two weeks after the May 21, 2007, incident with Rucker and approximately ten months after the August 18, 2006, incident with Hurst. In a memorandum dated June 6, 2007, Judge Brown explained to Eric Miller the reasons that he considered LaGrone's termination to be necessary. In summary, Brown gave the following reasons for her termination:

> 1) LaGrone chewed gum in a courtroom proceeding on May 22, 2007, even though Brown had advised her that it was inappropriate to chew gum in the courtroom and there is a large sign on the door saying not to chew gum in the courtroom;
>
> 2) Brown had concerns regarding LaGrone's loudness, volatility, and aggressiveness after the incident on May 21, 2007, involving LaGrone and Rucker, in which LaGrone yelled at Rucker;
>
> 3) In addition to numerous complaints regarding LaGrone's rudeness, loudness, and emotional frame of mind, Brown was concerned because LaGrone became irritated and was unreceptive when he confronted her about her lack of professionalism in

escalating the conflict with Hurst on August 18, 2006;

4) The Deputy Circuit Clerk complained that LaGrone became upset with her in the past and "threatened to cut [her];"

5) LaGrone showed a lack of remorse and did not apologize when she failed to place a matter on the court's docket, resulting in the presence of witnesses but the absence of attorneys;

6) On May 24, 2007, LaGrone failed to attend diversion appointments that she had scheduled and mishandled a truancy case;

7) Brown had received several complaints regarding LaGrone's rescheduling of or failing to appear for truancy diversion agreements;

8) LaGrone did not schedule her vacation time outside the parameters of her scheduled hearing days, instead taking vacation days when she was scheduled to assist in court;

9) Brown had received too many complaints regarding LaGrone's loud, argumentative, and disrespectful talk, and LaGrone's conduct and the manner in which she performed her duties was neither professional nor appropriate.

LaGrone denies that any of the allegations in Brown's memo, even if accurate, were sufficient to merit her termination.

### III.

**A. EMPLOYEE STATUS**

In order for the county to be liable, LaGrone must first show that she was a county employee. Jefferson County argues that LaGrone was an employee of Brown, not the county, because Brown had the authority to hire and fire her, and she was subject to his policies. However, LaGrone was paid by Jefferson County, received medical and dental insurance through Jefferson County, and held the job title of FINS/Truancy Officer for Jefferson County. Pursuant to Ark. Code Ann. § 16-13-219, the circuit court's expenses are paid out of the Jefferson County treasury. The parties have not

cited a case in which a person is paid by one unit of government while controlled by a person who is not employed by that governmental unit. In the absence of controlling precedent, the Court will look to cases that state the standard for deciding whether a person is an independent contractor or an employee. Those cases say that, in addition to the right to control, the Court must consider, among other things, the source of instrumentalities and tools; the method of payment; whether the work is part of the regular business of the hiring party; the provision of employee benefits; and the tax treatment of the hired party. *See Wojewski v. Rapid City Regional Hosp., Inc.*, 450 F.3d 338, 342–43 (8th Cir. 2006) (citing *Creative Non-Violence v. Reid*, 490 U.S. 730, 751–52, 109 S. Ct. 2166, 104 L. Ed. 2d 811 (1989)). "[A]ll of the incidents of the relationship must be assessed and weighed with no one factor being decisive," and the Court "may properly consider economic aspects of the parties' relationship." *Lerohl v. Friends of Minn. Sinfonia*, 322 F.3d 486, 489 (8th Cir. 2003) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324, 112 S. Ct. 1344, 117 L. Ed. 2d 581 (1992), and citing *Wilde v. County of Kandiyohi*, 15 F.3d 103, 106 (8th Cir. 1994)). Because LaGrone is paid by Jefferson County and receives insurance through Jefferson County, some of these factors indicate that she is an employee of Jefferson County. Therefore, adopting the standards in cases ruling on whether a person is an employee or an independent contractor and considering the relevant factors as stated in those cases for determining employment status, LaGrone has shown that there is a genuine issue of fact as to whether she was an employee of Jefferson County.

For Jefferson County to be liable under §§ 1981 and 1983, LaGrone must also show that the allegedly unconstitutional action implemented or executed a policy decision officially adopted by an officer of the county. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978). Although the doctrine of *respondeat superior* is not applicable to § 1983

lawsuits, the Supreme Court has held that "local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Id.* at 690–91, 98 S. Ct. at 2036. "[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S. Ct. at 2037–38.

In *Williams v. Butler*, 863 F.2d 1398 (8th Cir. 1988), the Eighth Circuit held that where a municipal judge had received absolute delegation of authority to hire and fire an employee, such that the judge's decision was final and without review, the municipality had delegated final policymaking authority to that judge. *Butler*, 863 F.2d at 1402–03. In this case, Jefferson County does not dispute that Brown had complete decision-making authority to terminate LaGrone and that LaGrone was subject to Brown's policies. Pursuant to Ark. Code Ann. § 9-27-308, Brown had the authority to hire LaGrone and assign her additional job duties. Because Brown had the absolute authority to hire and fire LaGrone, with no avenue for appeal or review, final policymaking authority was effectively delegated to Brown with respect to LaGrone's employment. If the factfinder determines that LaGrone was a county employee, the factfinder could also conclude that Brown had the final, policymaker authority for her as a county employee.[2] Therefore, Jefferson County may be liable for Brown's alleged retaliation.

---

[2] It appears that the Arkansas General Assembly may have created a class of county employees who are not subject to the county judge or the quorum court but to a circuit judge. Jefferson County understandably resists that conclusion, but it nevertheless appears that this is what the General Assembly may have done.

**B.     RETALIATION**

The Court employs the familiar *McDonnell Douglas* burden-shifting framework in analyzing LaGrone's retaliation claim. *Womack v. Munson*, 619 F.2d 1292, 1296 (8th Cir. 1980). LaGrone must show (1) statutorily protected activity; (2) adverse employment action; and (3) a causal connection between the two. *Id.* Once LaGrone makes out a prima facie case, the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendants present a legitimate, nondiscriminatory reason, then the burden shifts back to LaGrone to show that the stated reason was a mere pretext. *Id.*

LaGrone argues that, when she complained of Hurst's conduct, she was engaging in statutorily protected activity. To prove that she engaged in statutorily protected activity, she need not establish that the conduct she opposed—Hurst's conduct—was in fact unlawful discrimination. *Wentz v. Maryland Casualty Co.*, 869 F.2d 1153, 1155 (8th Cir. 1989). Instead, LaGrone "must demonstrate a good faith, reasonable belief that the underlying challenged action violated the law." *Id.*

The defendants assert that *Smith v. Int'l Paper Co.*, 523 F.3d 845 (8th Cir. 2008), is dispositive because that case involved an employee who complained about his supervisor's "cussing me, hollering, yelling at me" with no reference to race, color, or national origin. In that case, the Eighth Circuit affirmed the district court's dismissal because there was no evidence that the employee's complaint to the human resources manager referred to any harassment or discrimination based on the employee's race. *Smith*, 523 F.3d at 849. The only evidence in the record on that issue was the employee's deposition, which stated that the employee complained that his supervisor was "hollering and cussing" at him and "accusing him of doing damage" to equipment. *Id.* The Eighth

Circuit held that the employee's complaint to the human resources manager about the supervisor's "yelling, cussing and hollering at [the employee], with no reference to race, color, . . . or national origin, does not constitute protected conduct" because "[n]o reasonable person could believe" that the complaints were protected under Title VII. *Id.*

Here, LaGrone's good faith, reasonable belief is evidenced by the fact that she told Brown that Hurst had harassed other black employees in the past and in her official complaint she said that Hurst had harassed her and created a hostile working environment. The defendants argue that LaGrone never complained of racial discrimination directly, but that is not a prerequisite for her retaliation claim. Instead, LaGrone must show only that she had a good faith, reasonable belief that the action she challenged violated the laws against racial discrimination. Although Brown asserts that he did not know LaGrone was complaining of race discrimination, LaGrone told him that Hurst had harassed other employees whom Brown knew, or likely knew, to be African-American, and LaGrone filed an official complaint alleging harassment and a hostile working environment, so there is a genuine issue of material fact as to whether Brown knew that LaGrone was complaining of racial discrimination.

As noted, in order to establish a prima facie case of retaliation, an employee must show that an adverse action was taken against her and that there is a causal link between protected activity and the adverse employment action. *Kiel v. Select Artificials, Inc.*, 109 F.3d 1131, 1136 (8th Cir. 1999), *cert. denied*, 528 U.S. 818, 120 S. Ct. 59, 145 L. Ed. 2d 51 (1999). "[W]hat is meant by 'causal link' . . . is a showing that an employer's retaliatory motive played a part in the adverse employment action." *Kipp v. Missouri Highway and Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002) (quoting *Sumner v. United States Postal Service*, 899 F.2d 203, 208–09 (2d Cir. 1990)). Although

Brown's memorandum may also have stated other reasons for her termination, the memorandum mentioned LaGrone's complaints regarding Hurst and her refusal to simply accept the apology and move on as a reason for the termination. LaGrone has met her burden of showing that there is a genuine issue of fact as to whether a retaliatory motive played a part in Brown's decision to discharge her.

While Brown has stated legitimate, nondiscriminatory reasons for the termination, LaGrone has presented evidence to show that these reasons are pretextual. With respect to LaGrone's chewing gum in the courtroom, Brown admitted that he occasionally ate meals in the courtroom. As to the incident with Rucker, Brown did not discipline Rucker, yet he listed this incident as one of the reasons for LaGrone's termination. With respect to LaGrone's alleged threat to "cut" the deputy circuit clerk, Brown never conducted an investigation into this matter or filed a report on the matter, yet several months later Brown listed the threat as a reason for her termination. LaGrone denies that she threatened the clerk. Regarding LaGrone's vacation time, Brown admits that there is no written rule that forbade LaGrone from taking vacation when she did, and LaGrone had confirmed that a co-worker would handle her caseload before presenting the request to Miller, her supervisor. On the docketing issue, LaGrone states that Brenda Cuba is the person responsible for docketing cases, and Brown admits that LaGrone apologized for the miscommunication, even though Brown characterizes her apology as a "retort." Brown also states that LaGrone was unprofessional in her handling of truancy cases and mismanaged her caseload. However, in a May 21, 2007, memorandum to Brown, Miller stated that he thought LaGrone "was doing a good job" and "had no problem with her truancy work." Miller's memorandum did not indicate that his opinion of LaGrone's job performance was anything but positive. Thus, LaGrone has submitted evidence

sufficient to create an issue of fact as to whether the legitimate, nondiscriminatory reasons for her termination are pretextual.

**C.   QUALIFIED IMMUNITY**

Brown asserts that he is protected from LaGrone's complaint by qualified immunity. "Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Thomas v. Hungerford*, 23 F.3d 1450, 1452 (8th Cir. 1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982) (internal quotes omitted)). "'Clearly established' for purposes of qualified immunity means that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wilson v. Layne*, 526 U.S. 603, 614–15, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)) (internal quotes omitted). In *Crawford-El v. Britton*, 523 U.S. 574, 593, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998), the United States Supreme Court declined to place a higher burden on plaintiffs alleging retaliation, noting that "the improper intent element of various causes of action should not ordinarily preclude summary disposition of insubstantial claims." The Court went on to state: "[I]f the defendant-official has made a properly supported motion [for summary judgment on the ground of qualified immunity], the plaintiff . . . must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Crawford-El*, 523 U.S. at 600, 118 S. Ct. 1584; *see also Wilson v. Northcutt*, 441 F.3d 586, 590 (8th Cir. 2006).

The right not to be subjected to retaliation for complaining of unlawful discrimination in the

workplace is a clearly established right, and a reasonable governmental official like Brown would understand the contours of that right.  *See Turner v. Ark. Ins. Dep't*, 297 F.3d 751 (8th Cir. 2002). As this Court discussed above, LaGrone has offered sufficient evidence to create a genuine issue of material fact regarding the real reason for her termination, that is, whether Brown terminated her in retaliation for her complaints regarding racial discrimination and harassment.  Therefore, Brown is not entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the defendants' motions for summary judgment are DENIED. Documents #11 and #14.

IT IS SO ORDERED this 1st day of June, 2009.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE